THADDEUS KINNIER, Appellant, v. ABBY A. KINNIER, Respondent.

As regards the validity in this State of the decree of a court of competent jurisdiction in a sister State, the *status* of the parties within that State, and the question whether they or any of them were residents of that State, so as to give them a standing in court there, for the purposes of such decree, are to be determined by that court, and their determination thereupon cannot be questioned collaterally in our own.

The former husband of the defendant, a resident of Massachusetts, went to Illinois expressly to procure a divorce from her, commenced an action there in the proper court for that purpose, and she having appeared and permitted, by collusion with him, a decree of divorce to be granted against her, subsequently married the plaintiff here.—*Held*, in an action here, brought to annul the last marriage on the ground of the defendant's former marriage being still in force, that a complaint stating the above facts was insufficient, and a demurrer thereto must be sustained. (*Jackson* v. *Jackson*, 1 J. R., 424, questioned.)

Every judgment may be impeached for fraud or want of jurisdiction, and this rule applies as well to judgments of other States as to those rendered in our own.  But there must be facts which show it to be against conscience to execute the judgment, and which the injured party could not make available in a court of law, or which he was prevented from presenting by fraud or accident, unmixed with any fraud or negligence in himself or his agents.

The *lex loci* which is to govern married persons, and by which the contract is to be annulled, is not the law of the place where the contract was made, but where it exists for the time, where the parties have their domicil, and where they are amenable for any violation of their duties in that relation.

An allegation in a pleading, that the judgment of another State is void by the laws of that State, is a statement of a conclusion of law and not a fact, and is not deemed admitted by a demurrer.

(Argued April 26th; decided May 23d, 1871.)

APPEAL from the judgment of the General Term of the Supreme Court, in the first judicial district, affirming the

order of the New York Special Term, sustaining a demurrer to the complaint.

The defendant was married in Massachusetts, in 1848, to one Pomeroy. In 1855, Pomeroy went thence to Chiacgo to procure a divorce for a cause which would not be recognized by the laws of Massachusetts, and to evade the laws of that State. The defendant went to Chicago; appeared in the action, and put in an answer. The plaintiff put in no replication, as the law of the State required him to do, and the answer stood confessed. The parties, however, by collusion, procured to be entered and docketed, a formal decree of divorce, by which the parties were declared absolutely divorced. This was in September, 1855. In June, 1861, the present plaintiff and defendant were married. This action was brought to annul the marriage on the ground that the former marriage of the defendant was in force, and her divorce from Pomeroy void in this State. The complaint alleged the above facts. It is also alleged that the divorce was by the laws of Illinois void. There were two grounds of demurrer to the complaint, 1st, that this court has no jurisdiction of the alleged cause of action. 2d. The complaint is insufficient.

*George W. Parsons*, for the appellant. On the question of the impeachment of a judgment for fraud. (Story's Con. of Laws, § 608; 2 Kent's Con., 107, 108; *Jackson* v. *Jackson*, 1 John., 424; *Borden* v. *Fitch*, 15 John., 121; *Starbuck* v. *Murray*, 5 Wend., 148; *Bradshaw* v. *Heath*, 13 Wend., 407; *Myers* v. *Butler*, 6 Barb., 613; *Dodd* v. *Kew*, 42 Barb., 317; *Dobson* v. *Pearce*, 12 N. Y., 156; *Lazier* v. *Westcott*, 26 N. Y., 153; *Smith* v. *Woodworth*, 44 Barb., 198; *Buttrick* v. *Allen*, 8 Mass., 273; *Brissell* v. *Briggs*, 9 Mass., 462; *Medway* v. *Needham*, 16 Mass., 157; *Hall* v. *Williams*, 6 Pick., 247; *Aldrich* v. *Kinny*, 4 Conn., 380, 385; *Wood* v. *Watkinson*, 17 Conn., 500; *Warren Manufacturing Co.* v. *Ætna Ins. Co.*, 2 Paine, C. C. R., 501; *Lawrence* v. *Jarvis*, 32 Ills., 304; *Kerr* v. *Kerr*, 41 N. Y., 272.) On the question of a divorce obtained in a State other than that in which

the applicant is an inhabitant. (*Harteau* v. *Harteau*, 14 Pick., 181; *Inhabitants of Hanover* v. *Turner*, 14 Mass., 227; *Brown* v. *Brown*, 1 McCarter, 78; *Lorley's Case*, 2 Clark & F. (House of Lords), 567, note; Russell & Ryans' Crown Cases, 237; Story's Con. of Laws, §§ 228, 230; 2 Smith's Lead. Cases (5th Amer. ed.,) 606; *Touey* v. *Lindsley*, 1 Dowl., 140.) The question whether the Illinois court had jurisdiction over the person and over the subject, is open to inquiry. (*Lawrence* v. *Jarvis*, 32 Ill., 304.) Consent does not confer jurisdiction. (*Dred Scott* v. *Sandford*, 19 How. U. S., 402; *Grocers' National Bank*, v. *Clarke*, 31 How., 123.) When a statute prescribes the mode of acquiring jurisdiction, the mode pointed out must be complied with, or the judgment is a nullity. (*Bloom* v. *Burdick*, 1 Hill., 130; *Stanton* v. *Ellis*, 12 N. Y., 575; *Miller* v. *Brinkerhoff*, 4 Denio, 120; *Kerr* v. *Kerr*, 41 N. Y., 272; *Winship* v. *Winship*, 1 Green, N. J., 107.) Foreign laws are regarded as facts, and are to be proved. (*Monroe* v. *Douglass*, 1 Seld., 447.) Any one whose interest or rights are in any way affected by a judgment (such as the one in question), may impeach it by a direct action. (*Van Alstyne* v. *Erwine*, 1 Kern., 338; *Decker* v. *Bryant*, 7 Barb., 182; *Kerr* v. *Kerr*, 41 N. Y., at page, 275; *Sidensparker* v. *Sidensparker*, 52 Maine, 481; *De Armond* v. *Adams*, 25 Ind., 455.) A father has sufficient interest to institute a suit to nullify his daughter's marriage. (*Bevan* v. *McMahon*, 5 Jurist. N. J., 686; 28 Law Jour. Mat. Cas., 127; 2 Swabey and Tristram, 58.) In the absence of proof, the common-law is in force in all the States. (*White* v. *Knapp*, 46 Barb., 549.)

*John H. Reynolds*, for respondent. On the question of the jurisdiction of the Illinois court, and that the judgment rendered was not void. (*Lane* v. *Brommelman*, 17 Ills., 95; *Walker* v. *Rogan*, 1 Wis., 597; *Farrington* v. *King*, 1 Bradford, 182; *De Laney* v. *Reed*, 4 Iowa, 292; *Cole* v. *Butler*, 43 Maine, 401; *Kelly* v. *Mize*, 3 Smeed, 59; *Smith* v. *Knowlton*, 11 New Hamp., 192; *Farmers' L. and T. Co.* v. *McKin-*

*ney,* 6 McLean, 1 ; *Simms* v. *Slocum,* 3 Cranch., 300 ; *Preston* v. *Clark,* 9 Geo., 244.) The judgment cannot be impeached collaterally. (*Tilford* v. *Barney,* 1 Iowa, 575 ; *People* v. *Downing,* 4 Sandf., 193 ; *Lamprey* v. *Nudd,* 9 Foster (N. H.), 229 ; *Wesson* v. *Chamberlain,* 3 Comst., 332 ; *Maxwell* v. *Pittinger,* 2 Green, 156 ; *Anderson* v. *Fry,* 6 Indiana, 76 ; *State* v. *Conolly,* 6 Iredell, 243 ; *Miller* v. *Barkeloo,* 3 Eng., 318 ; *Brown* v. *Byrd,* 3 Eng., 384 ; *Cropsey* v. *McKinney,* 30 Barb., 48 ; *Burnsteed* v. *Reed,* 31 Barb., 669 ; *Barron* v. *Fait,* 18 Ala., 668 ; *Mobley* v. *Mobley,* 9 Geo., 247 ; *Wright* v. *Marsh,* 2 Green, 94 ; *Ranoul* v. *Griffie,* 3 Md., 54 ; *Mills* v. *Dickson,* 6 Rich., 487 ; *Vanderpoel* v. *Van Valkenburgh,* 2 Seld., 190 ; *Cyphert* v. *Mc Clure,* 22 Tenn., 195.) The court has never claimed jurisdiction to grant any such relief. (*Sugnet* v. *Phelps,* 48 Barb., 566.) Morality and decency require its refusal in the present case. (See *Singer* v. *Singer,* 41 Barb., 140.)

CHURCH, Ch. J. The question is whether the plaintiff has stated in his complaint facts sufficient to entitle him to a judgment declaring the marriage contract between him and the defendant void. The statute declares that such judgment may be pronounced for the following (among other) causes :

" That the consent one of the parties was obtained by force or fraud."

" That the former husband or wife of one of the parties was living, and that the marriage with such former husband or wife was then in force."

As to the first ground, it is scarcely claimed that the allegations of the complaint are sufficient to make a case of fraud under the statute, and the only ground insisted upon to sustain the action is that, at the time of the marriage with the plaintiff, the defendant had a husband living by a former marriage *then in force.* If the Illinois judgment was binding upon the parties to it, and if the defendant and her former husband were divorced by that judgment, as between themselves, their marriage was *not in force* when the plain-

tiff and defendant were married. The complaint alleges that the husband went to Chicago and filed his bill in a court of equity, and that the defendant appeared and put in an answer denying the equities of the bill, and that afterward, by collusion, a decree of divorce was entered as though no answer had been interposed.

The court had jurisdiction of the subject-matter of the action; that is, it had jurisdiction to decree divorces according to the laws of that State; and every State has the right to determine for itself the ground upon which it will dissolve the marriage relation of those within its jurisdiction. The court also had jurisdiction of the parties by the voluntary appearance of the defendant. These are the facts stated. It is true that the complaint states that an answer not replied to is taken as true, according to the laws of the State of Illinois and the practice of the court, and "in consequence thereof the said court could not entertain jurisdiction of said case." It is also alleged in general terms that the judgment was void in the State of Illinois. These are statements of law and not of facts, and the sufficiency of a pleading is to be determined by facts stated, and not by the conclusions of law averred, and the facts only are deemed to be admitted by a demurrer. In *Starbuck* v. *Murray* (5 Wend., 159), MARCY, J., said: "That part of the plea in this case which alleges that the defendant was not bound by the laws or in any manner subject to the jurisdiction of Massachusetts, is a statement of law, and not of fact. * * * It is a question of law whether he was bound by the laws of Massachusetts or subject to the jurisdiction of its courts. Although the defendant was not in the State, he might have authorized the entry of his appearance."

The logic of the complaint seems to be that because the answer was not replied to, the court was ousted of all further jurisdiction in the case, although both parties had appeared and the subject of the action was properly cognizable by the court. This position cannot be sustained. The answer might have been withdrawn or waived in open court, or a decree

entered by consent. Having jurisdiction of the subject-matter
and of the parties, the other questions relating to the plead-
ings and the form and manner of procedure were matters of
regularity merely, for which the judgment cannot be ques-
tioned collaterally. In *Shattenkirk* v. *Wheeler* (3 J. C. R.,
276), the court said: " There is no case in which equity has
ever undertaken to question a judgment for irregularity." It
is insisted that the Illinois court had no jurisdiction, because
the plaintiff in that action was not a *bona fide* resident of that
State. The averments in the complaint on this subject are
not very explicit. The complaint states that Pomeroy resided
in Massachusetts and went to Chicago in 1854 or 1855 for the
purpose of procuring a divorce and evading the laws of Massa-
chusetts. It does not state in terms that he did not reside in
Illinois at the time of filing his bill; but it does state that the
defendant put in an answer in July, 1855, denying that her
husband ever became a resident of Illinois, but that he went
there with a view of claiming the benefit of the laws of Illi-
nois concerning divorces, and that he was in fact a resident
of New York. It is probable that the pleader intended to
adopt the allegations of the defendant in that action as the
allegations of the plaintiff in this.

Viewing them in the most favorable light for the plaintiff,
the question is presented whether the Illinois decree can be
attacked in this State in a collateral action because the plain-
tiff in that action was not actually a *bona fide* resident of that
State at the time. I think not. It is conceded he was there,
appeared in that court and filed his bill, and took the decree.
The question whether he was a resident there, so as to enable
him to file his bill, was for that court to determine, and
although it may have decided erroneously, the decision cannot
affect the validity of the judgment. The *status* of all persons
within a State is exclusively for that State to determine for
itself. It is unnecessary to say what the effect might be, if it
was alleged that Pomeroy had never been within the State,
although he may have authorized the bill to be filed; but it
is conceded he was there, and sufficient facts are alleged to

give the Illinois court power to decide the question of domicil, and the judgment is not void, if we concede that the decision was erroneous, and if it is also conceded that the question of residence is vital to give jurisdiction. A wrong decision does not impair the power to decide, or the validity of the decision when questioned collaterally. But, aside from this consideration, we have a judgment rendered nearly sixteen years ago, of a court of one of the States of the Union having jurisdiction of the general subject-matter of the action, which decrees a divorce of the marriage contract between the defendant and her former husband. I think such a judgment is protected by the Constitution of the United States, which declares that " full faith and credit shall be given in each State, to the public acts, records and judicial proceedings of every other State." This means that it must have the same faith and credit as it has in the State where it was rendered. It must, however, be a judgment, and the parties and subject-matter must be within the jurisdiction of the court. Such judgments may be impeached for want of jurisdiction, and, also, for fraud, which will be hereafter noticed. (*Starbuck* v. *Murray*, 5 Wend., 148; *Kerr* v. *Kerr*, 41 N. Y., 272, and cases there cited.)

Until 1813, the courts of this State held that such judgments stood on the same footing as foreign judgments. (*Shumway* v. *Stillman*, 6 Wend., 447, and cases there cited.) But in *Mills* v. *Duryee* (7 Cranch., 481), it was decided by the Supreme Court of the United States, that *nil debet* was not a good plea to such a judgment, and that it had the same conclusiveness in every other State as in the State where it was rendered. Since that time, the decisions have been modified so as to conform to that case. In *Shumway* v. *Stillman*, *supra*, SAVAGE, J., says: "An examination of the cases results in the establishment of the following proposition : That the judgment of a court of general jurisdiction, in any State of the Union, is equally conclusive upon the parties in all the other States, as in the State in which it was rendered. This, however, is subject to two qualifications. 1st.

If it appear, by the record, that the defendant was not served with process, and did not appear in person, or by attorney, such judgment is void; and, 2d. If it appear by the record that the defendant appeared by attorney, the defendant may disprove the authority of such attorney to appear for him."

If there is no appearance in fact, there is no judgment, it is a nullity.

Since that time, the courts have steadily adhered to this position. In *Bicknell* v. *Field* (8 Paige. 445), the chancellor said: "It is at least doubtful whether any court in this State has any right or power to inquire into the regularity of a judgment recovered in one of the Superior Courts of a sister State, after a personal service of the process upon the party against whom such judgment was obtained." In *Dobson* v. *Pearce* (12 N. Y., 156), it was held that the record of a judgment of a sister State, when the parties appeared, is conclusive in this State as to the subject-matter of the action, and as to all questions litigated. A judgment of a sister State cannot be impeached by showing irregularity in the forms of proceeding, or a non-compliance with some law of the State where the judgment was rendered relating thereto, or that the decision was erroneous. Jurisdiction confers power to render the judgment, and it will be regarded as valid and binding until set aside in the court in which it was rendered. (12 N. Y., *supra.*)

It is insisted, however, that the judgment is void for fraud. It is alleged, in the complaint, that after the pleadings were in, a decree was taken *pro confesso* by collusion, which I infer means by consent or agreement of the parties.

It is a rule well settled, that every judgment may be impeached for fraud, and this applies as well to judgments of our own State, as to those of other States or foreign judgments; but what will constitute fraud sufficient to vitiate a judgment, and who can make the objection, and under what circumstances it can be interposed, are material questions.

The rule is that there must be facts which prove it to be against conscience to execute the judgment, and which the

injured party could not make available in a court of law, or
which he was prevented from presenting by fraud or accident,
unmixed with any fraud or negligence in himself or his
agents. (Story's Eq. Jur., § 887.) This decree was binding
upon the parties to it, within this rule. No fraud is alleged
by either against the other, and neither could assert that it
was not a valid judgment, as they were both equally guilty
of the fraud. (Bishop on Marriage, § 706.) It effectually
divorced the parties to it, and their marriage was no longer
in force in any legal sense. The plaintiff in this action has
not been defrauded, nor is he injured by it.

The plaintiff was entitled to marry a marriageable person,
and though she may not have been, in other respects, all he
anticipated or all that was desirable; yet she was competent to
marry, because her former marriage was not *then in force*,
and being competent, it is of no legal consequence to the
plaintiff how she became so. Conceding fraud as alleged, he
cannot avail himself of it. His success in this case would
have no effect upon the status of the former husband, while
the position of the defendant would be anomalous. By the
judgment in this action, she would be declared the wife of
her former husband, and by the judgment of another court,
equally binding upon her, she would be declared not to be his
wife. She could not claim marital rights from either hus-
band, and it would be, at least, hazardous to marry another.

I have been unable to find any authority sanctioning a prin-
ciple which will uphold this action. It is claimed that the case
of *Jackson* v. *Jackson* (1 J. R., 424), is a direct authority in
favor of it. In that case the parties were married and resided
in this State. The wife went to Vermont and filed a bill for
a divorce, for causes not sufficient to authorize a divorce in
this State. The husband appeared and defended the action,
which resulted in a decree of divorce and a judgment for
alimony, upon which the wife brought an action in this State
to recover the alimony. The court decided against a reco-
very, on the ground that the wife could not acquire a domicil
in Vermont separate from her husband, and also on the

ground that the parties went there to evade the laws of this State, and the courts here would not enforce the judgment. It will be seen that the facts in material points are quite unlike this case. Here it does not appear where the parties were married, but it does appear that they did not reside here, but in Massachusetts, and that the laws of that State and not this were evaded, and in that case the action was directly upon the judgment.

But I am unable to see how that case can be sustained in the light of the later decisions. In the first place, I am not prepared to assent to the proposition that a wife may not have a domicil separate from her husband, when she has a cause for a divorce, and her separate and antagonistic interests are thus concerned. (Bishop on Marriage, §§ 728, 730.) Nor can I assent to the reason given for allowing the husband to repudiate the binding force of the judgment upon him, after voluntarily submitting himself to the jurisdiction of the court, and litigating the case upon its merits. As to him, the questions litigated were *res adjudicata.*

It is to be regretted that marriage and divorce laws are not uniform in all the States, and we think they should all conform to the laws of this State; but we must never fail to remember that the States are equal in power, and that each State has the same right to exercise its judgment in the passage of laws, on this and every other subject, that our own State has; and in dealing with questions of this character, it is gratifying to know that the requirements of the Constitution accord with the principles of the "golden rule."

It is now well settled that the *lex loci* which is to govern married persons, and by which the contract is to be annulled, is not the law of the place where the contract was made, but where it exists for the time, where the parties have their domicil, and where they are amenable for any violation of their duties in that relation. (Story's Conflict of Laws, § 230a.)

The judgment sustaining the demurrer must be affirmed. All concurring, judgment affirmed.