RUSSELL A. LIPSCOMB, Plaintiff, *v.* HELENE K. LIPSCOMB, Defendant.

Supreme Court, Monroe County, March 31, 1943.

*Brown, Brenton & Watts* for defendant.

*Harry A. Sessions* for plaintiff.

GILBERT, J. The above-entitled action is brought by the plaintiff to set aside, as void, a separation agreement entered into between the parties as husband and wife on or about March 4, 1940. The complaint alleges that the said agreement was entered into on the part of the plaintiff in this action by reason of certain alleged fraudulent representations theretofore made by the defendant which were relied upon by plaintiff at the time the agreement was executed.

The defendant's amended answer, in addition to a general denial of the alleged fraud, pleaded an affirmative defense of *res judicata* and two counterclaims. Plaintiff moved to strike out the affirmative defense, one of the counterclaims *in toto,* and certain allegations of the second counterclaim. Plaintiff's motion was granted at Special Term and an order entered accordingly. Thereafter the defendant appealed from the order, and the Appellate Division (265 App. Div. 1033) reversed the order without opinion. This motion, therefore, comes before this court with the pleadings in their original state.

The defendant now moves for a judgment on the pleadings and for a summary judgment on her counterclaims, pursuant to rules 112 and 113 of the Rules of Civil Practice. No reply to the counterclaims, set up in defendant's amended answer, has ever been made by the plaintiff.

The parties were married in this State in November, 1917, and thereafter lived together as husband and wife until the year 1940. In March, 1940, the separation agreement above referred to was entered into between the parties. Subsequent to the execution of the agreement, the defendant moved to the State of Nevada and there instituted an action for divorce. The

plaintiff appeared in the action by attorney and served an answer to the complaint. Thereafter, and on May 6, 1940, a hearing was had before the Nevada court and a decree of divorce granted to the wife. In the Nevada action the wife pleaded the separation agreement, theretofore entered into between the parties, and the prayer for judgment asked that the agreement be " ratified, approved and confirmed." The Nevada court made findings of fact and conclusions of law holding that the separation agreement, which was offered in evidence on the hearing before the court, should be " ratified, approved and confirmed " and the decree, thereafter entered, did so ratify, approve and confirm the agreement. The plaintiff herein made the monthly payments specified in the agreement between the parties down to and including the payment due May 1, 1941, but has made no payment since that date and has now brought this action to void the separation agreement on the ground of fraud.

The defendant's affirmative defense, which has been held by the Appellate Division to be a proper defense, alleges the proceedings in the divorce action brought by the defendant herein against the plaintiff in the State of Nevada, and alleges that the issue in reference to the separation agreement, which the plaintiff herein now tenders, was or could have been adjudicated in the Nevada action and is now *res judicata,* and that the plaintiff is now estopped from pleading the issue in this action. In support of this motion, and pursuant to the provisions of rule 113 of the Rules of Civil Practice, the defendant has annexed to the moving papers an exemplified copy of the documentary evidence and official record of the District Court of the First Judicial District of the State of Nevada, which establishes *prima facie* the allegations of the affirmative defense. Unless the plaintiff, by affidavit or other proof, shows facts sufficient to raise an issue in respect to the verity and conclusiveness of such documentary evidence or official record, the plaintiff's complaint herein must be dismissed and judgment granted to defendant on her counterclaims. Each of defendant's two counterclaims demands the same relief, to wit: A money judgment for the accrued monthly payments provided in the separation agreement; the first counterclaim demanding such relief on the theory that the separation agreement has merged in the Nevada decree and the second counterclaim demanding the same relief on the theory that the separation agreement, by its terms, survived the Nevada decree.

It is very doubtful whether the fraud alleged by plaintiff, with the exception of two specifications hereinafter referred to, would in any event be considered material by the court if they were sustained on a trial. The two exceptions would be, first, the allegation that the defendant represented to plaintiff that she would release him from any obligation for support and maintenance within the period of one year from the date of the separation agreement and, second, that the parties were living together at the time the agreement was entered into and continued to live together for some period thereafter.

It has been held in *Garlock* v. *Garlock* (279 N. Y. 337) that an agreement for support and maintenance, not followed by a separation of the parties, is void under section 51 of the Domestic Relations Law. Assuming that the agreement is subject to attack as violative of section 51 of the Domestic Relations Law, the circumstances in reference thereto were known to plaintiff at the time of the Nevada action and, if plaintiff believed the agreement to be illegal by reason of the circumstances under which it was executed, plaintiff could have pleaded such a defense in the Nevada action. Not having done so, but having slept on his rights in that respect at that time, that issue may not be raised in this action, if the Nevada decree is *res judicata* of that issue.

It is not necessary in order to apply the doctrine of *res judicata* that the particular question at issue was raised and passed upon directly in a former action. It is sufficient if the question at issue could have been so raised and litigated in the former adjudication. " It is a general rule that a valid judgment for plaintiff is conclusive not only as to defenses which were set up and adjudicated, but also as to those which might have been raised; so that defendant can neither set up such defenses in a second action or in further proceedings in the same action, nor can such defenses be used by the former defendant as the basis of a subsequent action against the former plaintiff." (34 C. J., Judgments, § 1267; *Phillips* v. *Griffen*, 236 App. Div. 209; *Frost* v. *Frost*, 260 App. Div. 694; *United States* v. *California & Oregon Land Co.*, 192 U. S. 355; *Stewart* v. *Stewart*, 198 App. Div. 337.) If the separation agreement be deemed to have been adopted and to have become a part of the Nevada decree, it cannot be attacked collaterally in this action. (*Hess* v. *Hess*, 276 N. Y. 486; *Hoyt* v. *Hoyt*, 265 App. Div. 223.)

There is ample authority to the effect that such an agreement may by its terms survive its incorporation in a divorce decree. (*Schmelzel* v. *Schmelzel*, 287 N. Y. 21; *Goldman* v. *Goldman*, 282

N. Y. 296; *Galusha* v. *Galusha,* 116 N. Y. 635, 138 N. Y. 272.) The fact of survival, however, does not defeat the application of the rule of *res judicata* but merely establishes the right of a party to pursue rights secured by the contract independent of the divorce or separation decree which has incorporated within it or adopted the terms of the contract.

The plaintiff, in his answering affidavits on the motion now being considered, claims that the issue of fraud, which he now tenders, could not have been adjudicated in the Nevada action for the reason that the fraud was then unknown to him. Of the two specifications of fraud which the court has hereinbefore pointed out as sufficient, if established, this contention of plaintiff could only apply to the alleged representation by defendant that she would release him from any obligation to pay for her support and maintenance within one year from the date of the contract. The other specification, the alleged fact that the parties were residing together when the agreement was executed, and continued to live together for some period thereafter, was of course known to plaintiff at all times.

It is difficult to understand why, if such representations were made by defendant, plaintiff thereafter entered into an agreement in writing which specifically provided a term of payment directly opposed to such a contention. The fifth clause of the separation agreement provides specifically that plaintiff shall pay to defendant the sum of $300 per month *during the term of the life* of the defendant with certain exceptions not now pertinent. Despite this provision of the separation agreement, the plaintiff executed the same and thereafter, when the agreement was pleaded in the Nevada divorce action, plaintiff did not raise his voice to repudiate the instrument. There is a very serious question whether on a trial of this action plaintiff would be entitled to question by parol the terms of a written instrument. (*Adams* v. *Gillig,* 199 N. Y. 314.) As stated in *Adams* v. *Gillig* (p. 318) : " It may be assumed that promises of future action that are a part of the contract between the parties, to be binding upon them, must be stated in the contract. An oral restrictive covenant, or any oral promise to do or refrain from doing something affecting the property about which a written contract is made and executed between the parties, will not be enforced, not because the parties should not fulfill their promises and their legal and moral obligations, but because the covenants and agreements being promissory and contractual in their nature and a part of, or collateral to a principal contract, the entire agreement between the parties must be deemed to

have been merged in the writing. The value of a writing would be very seriously impaired if the rule mentioned in regard to including the entire agreement in such writing is not enforced.'' The usual remedy where it is alleged a written instrument does not contain the agreement between the parties is an action to reform the contract. Here, however, the plaintiff does not seek to reform, but to destroy, the instrument by reason of fraud in its inception. To support an action for fraud based upon a statement that is false and known by the person to be false and which is made to induce the execution of a contract and which does induce the contract, it must be a statement of '' an existing fact material to the person to whom it is made,'' not a promise of future action. (*Adams* v. *Gillig, supra.*)

It will be seen, therefore, that, even though the rule of *res judicata* did not apply to this specification of fraud raised by the plaintiff, nevertheless plaintiff's testimony would not be received to vary the terms of a written instrument. However, the validity of the agreement was directly at issue in the Nevada action. Had there been no agreement between the parties it is safe to assume that the Nevada court by its decree would have provided such terms of payment for defendant's support and maintenance as it might have deemed proper. There was an existing agreement between the parties; it was pleaded by the wife; the court was asked to approve and ratify it; the agreement contained a provision in respect of the amount to be paid and the period of payment; the husband did not question this provision; he knew that the period of payment was not the period he now asserts as the proper period of payment; the court had jurisdiction of the parties and of the subject matter. Clearly the rule of *res judicata* applies and the husband may not now raise the question of the validity of the agreement.

This is not an action by the plaintiff attacking the validity of the Nevada divorce decree. It is an action based solely on the separation agreement which, by its terms, should survive whether or not the marriage between the parties should continue or be thereafter dissolved by a decree of divorce. Had the plaintiff brought an action attacking the Nevada decree on the ground that it was fraudulently obtained or that his appearance in that action had been fraudulently procured, then another situation would arise. (See *Prime* v. *Hinton*, 244 App. Div. 181.) The facts in the case of *Prime* v. *Hinton* are quite similar to the facts alleged by the plaintiff in the present action. There it was held that a judgment fraudulently obtained is not entitled to protection under the full faith and credit clause. (Citing

*Dobson* v. *Pearce,* 12 N .Y. 156; *Andrews* v. *Andrews,* 188 U. S. 14; *Hunt* v. *Hunt,* 72 N. Y. 217; *Gray* v. *Richmond Bicycle Co.,* 167 N. Y. 348.) It was also there held that when jurisdiction is acquired as the result of a fraudulently induced appearance, a judgment based thereon is fraudulently procured and may be attacked collaterally. (Citing *Greenbaum* v. *Greenbaum,* 147 Misc. 411, affd. 239 App. Div. 912; *Abercrombie* v. *Abercrombie,* 64 Kan. 29; *Gray* v. *Richmond Bicycle Co., supra.*) Had such an action been brought by plaintiff and successfully maintained, the defense of *res judicata* would not be available to the defendant. However, such is not the type of action which plaintiff has brought and plaintiff does not contest the validity of the Nevada decree but, as the reply brief used by the defendant in her appeal to the Appellate Division would indicate, the plaintiff has ratified the decree by a subsequent remarriage. Not having attacked the validity of the Nevada decree and that court having jurisdiction of the parties and of the subject matter, plaintiff is now bound by the issues therein litigated as well as the matters relating to those issues which might have been litigated.

The defense of *res judicata* set up in defendant's amended answer to the complaint herein has been held sufficient as a matter of law by the decision of the Appellate Division; the facts upon which the defense is founded have been established *prima facie* by the official records annexed to the moving affidavits; plaintiff has not by affidavit or other proof shown facts sufficient to raise an issue with respect to the verity and conclusiveness of the official records; therefore, no reply having been served by the plaintiff to the counterclaims set forth in the amended answer, nothing remains to be litigated in this action and defendant's motion should be granted.